CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

August 12, 2024

LAURA A. AUSTIN, CLERK
BY:
        s/A. Beeson
        DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **TOCCARA Y. PULLER,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 7:23CV00588 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **PAUL WILLS, ET AL.,** | ) | JUDGE JAMES P. JONES |
| | ) | |
| Defendants. | ) | |

*Toccara Y. Puller, Pro Se Plaintiff; Jeremiah J. Johansen, Assistant Attorney General, CRIMINAL JUSTICE & PUBLIC SAFETY DIVISION, OFFICE OF THE ATTORNEY GENERAL, Richmond, Virginia, for Defendants.*

The plaintiff, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that correctional officers violated her rights by using excessive force against her, retaliating against her, and interfering with her legal mail and/or legal documents. After review of the record, I conclude that the defendants' Motion for Summary Judgment must be granted on the ground that Puller failed to exhaust available administrative remedies regarding her claims before filing this action. I will also dismiss Puller's pending motions for summary judgment and preliminary injunctive relief.

## I. BACKGROUND.

Puller's claims are based on events that allegedly occurred while she was incarcerated at Fluvanna Correctional Center for Women (FCCW), a prison facility

operated by the Virginia Department of Corrections (VDOC).  On May 30, 2023,[1] Puller claims that she was first in line to receive her prescription medication when another inmate allegedly began name calling.  As a result of the ensuing disagreement between the inmates, officers ordered Puller to sit in a "reflection cell," and Puller refused.  Am. Compl. 5, ECF No. 5.  Puller alleges that Officers Wills and Daniels "used excessive force and caused injury to [her] right arm and shoulder and left lower leg" and "left a scar from leg irons being to [sic] tight and pulling [her] bare foot for a long distance to Bld. [sic] 8 segregation."  *Id.*  Puller also alleges violations of her rights under the "ADA and Amendment(s) 1, 5, 6, 8, and 14" by Officer Stone and Unit Manager (UM) Haight, namely, "retaliation due to lawsuits" Puller had filed in federal court, and "interference with legal mail preparation" by "Unit Manager Haight and Counselor Ramey."[2]  *Id.*  As relief, Puller seeks monetary damages.[3]

---

[1]  Puller's Amended Complaint alleges that the reflection cell incident occurred in July 2023, but defendants provide copies of Puller's complaint forms indicating that this incident occurred on May 30, 2023.  Puller has not objected to the accuracy of these records.  Therefore, I will consider May 30, 2023, as the date of the alleged excessive force incident.

[2]  In the Amended Complaint, Puller referred to Officer Wills as Officer Wells and to Officer Ramey as Officer Raimey.  Based on information from the defendants, the docket has been corrected.

[3]  Puller also seeks release from state custody and her current incarceration.  Release from incarceration is not a remedy available under § 1983, because challenges to the fact or length of a state prisoner's incarceration must be raised through a habeas corpus action after exhaustion of state court remedies.

Puller filed her § 1983 action in the United States District Court for the Eastern District of Virginia in July 2023.  That court required her to complete an Amended Complaint using a § 1983 form and naming individuals as defendants.  She did so, naming officials at FCCW as defendants.  Thereafter, the case was transferred to this court for further disposition.  I construe the Amended Complaint as alleging three claims for relief: (1) in May 2023, after Puller refused to sit in a reflection cell, Officers Wills and Daniels used excessive force to take her to segregation and caused her physical injuries; (2) the defendants have retaliated against her because she has filed lawsuits in federal court; and (3) the defendants have interfered with her legal mail/legal document preparation.

The defendants have filed a Motion for Summary Judgment, arguing that Puller failed to exhaust the administrative remedies before filing her claims, in violation of 42 U.S.C. § 1997e(a).  The court notified Puller of her opportunity to respond to the defendants' arguments and evidence.  Puller has filed several submissions since that notice, and the time allotted for her response to the motion itself has elapsed.  Therefore, I deem the defendants' motion to be ripe for consideration.

## II. DISCUSSION.

### A. Standards of Review.

The Federal Rules of Civil Procedure provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court must view the facts and justifiable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 31213 (4th Cir. 2013). To withstand a summary judgment motion, the nonmoving party must produce sufficient evidence from which a reasonable jury could return a verdict in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Under 42 U.S.C. § 1997e(a), a prisoner cannot bring a civil action concerning prison conditions until she has first exhausted the available administrative remedies. This exhaustion requirement is "mandatory," *Ross v. Blake*, 578 U.S. 632, 638 (2016), and "applies to all inmate suits about prison life." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To comply with § 1997e(a), an inmate must follow each step of the established grievance procedure that the prison facility provides to its inmates and meet all deadlines within that procedure. *Woodford v. Ngo*, 548 U.S. 81, 90-94 (2006). Even if the particular form of relief the inmate seeks in her lawsuit is not available through the prison's grievance proceedings, she must, nevertheless,

exhaust properly all available remedies under that procedure before bringing a civil action in this court.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

B.  VDOC Grievance Procedures.

Operating Procedure (OP) 866.1 is the written administrative remedies procedure that VDOC inmates must follow to comply with § 1997e(a).  Mem. Supp. Mot. Summ. J. Hartwell Aff. & Enclosure A, ECF No. 30-1.  All issues are grievable except disciplinary proceedings and matters outside the control of the VDOC.  Under OP 866.1, an inmate with a grievance about some event or issue must first make a good faith effort to resolve her concerns informally, which she may do by completing a Written Complaint form and submitting it to prison staff.  She should receive a written response on the bottom of the Written Complaint form within fifteen days, to allow her to initiate the formal grievance procedure by filing a Regular Grievance, with the Written Complaint form or any other relevant documentation attached.  The filing of a Written Complaint does not satisfy the exhaustion requirement under § 1997e(a).  If fifteen days have passed without a staff response to the Written Complaint, the inmate may submit a Regular Grievance.

A Regular Grievance must be filed within thirty days of the occurrence about which it complains.  It should only address one issue, and responding officials will only address one issue, if multiple issues are presented.  If a Regular Grievance does not comply with the filing requirements of OP 866.1, it will be rejected at intake and

returned to the inmate within two working days from the date of receipt. The respondent will note on the back of the form the reason for rejection (expired filing period, more than one issue raised, request for services, etc.). The respondent will also instruct the inmate how to remedy any problems with the grievance if feasible so that she can correct the issue and resubmit the Regular Grievance. If the inmate disagrees with the intake decision, she may send the Regular Grievance to the Regional Ombudsman for review of that decision. There is no further appeal of an intake decision, and an appeal of the intake decision does not satisfy the exhaustion requirement.

Once the Regular Grievance is accepted at intake, the warden or his designee will investigate the complaint it contains and send the inmate a Level I response. If the responding official determines the grievance to be "unfounded," the inmate has five days to submit the Regular Grievance and attachments on appeal to Level II, to an appropriate VDOC official such as the Regional Administrator or other administrator, depending on subject matter. In most cases, this Level II review is the final available level of appeal. For full exhaustion, the inmate must submit the claim via a Written Complaint, then in a Regular Grievance, and then through all available levels of appeal in OP 866.1.

C.  Puller's Administrative Remedy Records.

Hartwell states that review of FCCW administrative remedy records reflects that Puller did not properly exhaust her administrative remedies concerning her claims in this civil action.  While she filed some Written Complaints related to her claims, she withdrew some of them and never filed any Regular Grievance about any of the claims.

Specifically, Puller filed a Written Complaint, Log No. FCC-23-INF-00850, dated May 30, 2023, complaining that staff had physically assaulted her that day after she refused to go to a reflection cell and that staff took her property in retaliation for a lawsuit she had filed against the VDOC Director and the Arlington County Sheriff's Department.  On June 15, 2023, Puller voluntarily withdrew this Written Complaint, acknowledging that if she did so, she would not receive any response to her complaint.  The assistant warden witnessed Puller's signature on the withdrawal. Hartwell Aff., Enclosure C, ECF No. 30-1.

Puller also filed a Written Complaint, Log No. FCC-23-INF-00851, dated May 31, 2023, complaining that UM Haight threatened that she would get rid of Puller.  Puller perceived this comment as a threat to her life.  On June 15, 2023, Puller voluntarily withdrew this Written Complaint, acknowledging that if she did so, she would not receive any response to her complaint.  The assistant warden witnessed Puller's signature on the withdrawal.  *Id*. at Enclosure D.

Puller submitted a Written Complaint, Log No. FCC-23-INF-00852, dated May 31, 2023, complaining that UM Haight, Lt. Jackson, Officer Stone, and Lt. Daniel, used excessive force against her. Puller stated that she wanted to press charges against the perpetrators. Lt. Jackson responded to this Written Complaint on June 20, 2023, advising that if she wanted to press charges, she could write to the magistrate. *Id*. at Enclosure E.

Puller filed a Written Complaint, Log No. FCC-23-INF-00853, dated May 31, 2023, complaining that she was not given her evening meds or her self-meds that she needed for a new back injury. She also asked to be seen for injuries from the excessive force used against her and asked for pain medication and an X ray. Medical responded on June 15, 2023, and advised her to file a sick call form if she had not already done so. The response also indicated that Puller's prescription for Zanaflex is "PRN," so she would need to ask for that medication, which did not expire until the end of June 2023. *Id*. at Enclosure F.

Puller submitted a Written Complaint, Log No. FCC-23-INF-00870, dated May 22, 2023, addressed to the FCCW Business Office. This filing complained that Counselor Ramey violated due process by not forwarding legal documents promptly and by charging her for photocopies, which allegedly delayed a submission for Puller's civil case. UM Haight responded on June 22, 2023, advising Puller that copies of all pages had been made, up to the point where Puller exceeded the

maximum loan amount granted to indigent inmates for legal copies. *Id.* at Enclosure G. Puller submitted a second Written Complaint and a Facility Request form with Log No. FCC-23-INF-00870. No officer responded to these extraneous filings. Hartwell Aff. at ¶ 19.

Hartwell's review of Puller's FCCW Grievance File indicated that Puller did not submit any Regular Grievances complaining that the defendants used excessive force against her, that she did not receive her medications, that she was not seen for injuries received during the use of force incident, or that she did not get help with legal documents. She also did not submit any Regular grievance complaining that any defendant retaliated against her because of lawsuits.

Puller has presented the court with several lengthy submissions since she received the defendants' motion regarding her failure to exhaust remedies. These submissions, however, do not address the exhaustion issue. Rather, for the most part, they present allegations about unrelated events in other locations before her incarceration or while she was confined at the Arlington County Jail. She does not offer any affidavit or documentation contradicting the defendants' evidence that she failed to follow up any Written Complaint related to her claims in this case by submitting a Regular Grievance and pursuing other levels of review, as required for exhaustion of the VDOC grievance remedy procedure. Nor does Puller state facts showing that the remedy procedure was not available to her in 2023 at FCCW after

the events alleged in her claims. *Ross*, 578 U.S. at 642 (holding that § 1997e(a) does not require inmate to exhaust administrative remedies that are "unavailable").

Based on the record before me, I conclude that Puller has failed to present a genuine issue of material fact on which she could persuade a fact finder that she properly exhausted administrative remedies or that such remedies were unavailable to her at FCCW in 2023. Therefore, I conclude that Puller's lawsuit is barred under 42 U.S.C. § 1997e(a) because she did not properly exhaust administrative remedies before filing the case, and that the defendants are thus entitled to summary judgment on that ground as a matter of law. I also find no indication from the VDOC grievance procedure in the record that Puller could now pursue and exhaust administrative remedies about the defendants' alleged violations of her constitutional rights in 2023. Accordingly, I will dismiss Puller's claims with prejudice.

### D. Puller's Pending Motions.

Puller has filed a motion that asks the court to grant summary judgment on her behalf. Because I have determined, however, that her claims in this case are barred under § 1997e(a) because she failed to exhaust administrative remedies, I must also find that her summary judgment motion is without merit and deny it.

One of Puller's submissions, titled "Affidavit," was construed and docketed as a motion requesting interlocutory injunctive relief. Mot. 1, ECF No. 36. Puller alleges that she was placed in segregated confinement on January 31, 2024, away

from her legal documents.  She asserts that she is innocent of any charges worthy of restricted housing and is in imminent danger of an unspecified nature.  She claims she has been placed in "a PREA situation through threats and desperate current events" and "inhumane conditions."  *Id.* at 2.  She asks the court to order FCCW staff to stop retaliating against her for unspecified reasons and seeks a transfer or release from custody.  She states her belief that "race is a motive, and ADA is a motive for this to happen to me as a pro se litigant."  *Id.* at 2.  She mentions FCCW staff members involved in these incidents who are not defendants to this lawsuit.

A party seeking interlocutory injunctive relief must state facts clearly showing "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  Each of these four factors must be satisfied.  *Id.*

Puller's allegations simply do not meet this standard.  She makes conclusory allegations that staff members at FCCW have retaliated against her without stating any evidence that the staff members knew she had filed a prior lawsuit or based any decisions on that fact, related to their interactions with Puller.  Moreover, although she claims to be in danger, she does not state facts demonstrating how or why her circumstances at FCCW place her in imminent danger of irreparable harm.  Moreover, Puller has no constitutional right to be confined at a prison of her

preference.  *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983) (finding no liberty interest related to interstate prison transfer).  Puller has not satisfied the legal standard under *Winter* to warrant interlocutory injunctive relief, and I will deny her motion.

### III.  CONCLUSION.

For the stated reasons, it is **ORDERED** as follows;

1.  Defendant's Motion for Summary Judgment, ECF No. 29, is GRANTED;

2.  Plaintiff's motions, ECF Nos. 36 and 48, are DENIED; and

3.  Plaintiff's action will be DISMISSED WITH PREJUDICE.

A separate Judgment will enter herewith.

ENTER:  August 12, 2024

/s/  JAMES P. JONES
Senior United States District Judge